UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SANTA FE MEDICAL GROUP, LLC,　　　　　　　　　　　　　　　No. 15-11247-ta7

　　　　Debtor.

## OPINION

Before the Court is an unpaid chapter 11 professional's motion to require other professionals to disgorge a portion of their collected fees, so the pain of this administratively insolvent estate can be shared more equally. The motion raises an issue of statutory construction that has been addressed by courts over the years, with inconsistent results. For the reasons set forth below, the Court must deny the motion.

### I.　　FINDINGS OF FACT

The Court finds:[1]

Debtor filed this case under chapter 11 on May 14, 2015. On the same date three affiliates of the Debtor, Atrinea Ruidoso, LLC; Atrinea Health, LLC; and Corazon Family Health, P.C. also filed chapter 11 cases. On May 22, 2015 the Court ordered that the cases be jointly administered.

The debtors employed a number of professionals, including Tal Young; Lewis Roca Rothgerber Christie ("LRRC"); Sturm & Associates; Candice Lee Owens; and Hanlon & Hudson. The Court approved employment applications for each professional. The employment orders

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court took judicial notice of the docket to make most findings, as the parties consented to the Court ruling without an evidentiary hearing. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket").

permitted the debtors to make periodic payments to professionals before the fees had been allowed. On the petition date, Young and LRRC held retainers.

The United States Trustee's office appointed the movant, Susan N. Goodman, RN JD, as the Patient Care Ombudsman for each debtor.

The debtors apparently made limited payments to some of the estate's professionals. No professional ever filed an interim fee application.

By March of 2016, it was clear that reorganization was not possible for any of the debtors. The chapter 11 cases filed by Atrinea Ruidoso, LLC; Atrinea Health, LLC; and Corazon Family Health, P.C. were closed on April 1, 2016. Each of these debtors ceased operating. Patients went elsewhere.

Debtor's case was converted to a chapter 7 case on March 11, 2016. It is still pending. Like its affiliates, Debtor stopped operating in March.

On April 29, 2016, Goodman filed her first and final application for compensation. From appointment to March 31, 2016, Goodman's combined fees and costs for all four cases totaled $62,425.65. Goodman did not bill each estate separately.

Goodman has not been paid for any of her billed time, and has been reimbursed only $1,500 for costs. Other professionals fared better, but nevertheless this case resulted in a substantial loss for most professionals. LRRC, for example, is still owed $146,000 for its work in the combined cases.

Most other estate professionals, including Young and LRRC, filed first and final fee applications on April 30, 2016.

On May 6, 2016, Goodman filed her Motion for Equitable Apportionment of Final Professional Fees to Include the Patient Care Ombudsman. The United States Trustee's office

supports the motion; the other chapter 11 professionals oppose it. The New Mexico Taxation and Revenue Department supports the motion, provided it can share ratably in any disgorged amounts. The parties consented to the Court ruling on the motion without an evidentiary hearing.

No objections were filed to any of the final fee applications filed by Goodman, Young, LRRC, or the other estate professionals. On May 31, 2016, the Court entered orders approving the final fee applications of Young, LRRC, the Owens firm, and Sturm & Associates. The Court entered a similar order, approving Goodman's first and final fee application, on June 2, 2016.

There is not enough money in the chapter 7 estate to pay the chapter 11 professionals their allowed fees. The estate also owes substantial amounts to other chapter 11 administrative expense claimants.

## II. DISCUSSION

### A. Disgorgement Upon Insolvency.

In the typical "disgorgement upon insolvency" case, like here, a debtor attempts to reorganize in chapter 11, fails, converts to chapter 7, and is administratively insolvent. In such cases the chapter 7 trustees sometimes ask the court to order chapter 11 professionals to "disgorge" a portion of their paid fees so the recovered funds can be redistributed pro rata among all estate professionals.

There are three main judicial responses to such motions. Some courts hold that they have the discretion to order disgorgement;[2] others that they must order disgorgement;[3] and still others

---

[2] *See, e.g., Guinee v. Toombs (In re Kearing),* 170 B.R. 1, 7-8 (Bankr. D.D.C. 1994); *In re Lochmiller Indus.,* 178 B.R. 241 (Bankr. S.D. Cal. 1995); *In re Metropolitan Elec. Supply Corp.,* 185 B.R. 505, 510 (Bankr. E.D. Va. 1995); *In re Dick Cepek, Inc.,* 339 B.R. 730 (9th Cir. BAP 2006); *Matz v. Hoseman*, 197 B.R. 635, 640-41 (N.D. Ill. 1996).

[3] *See, e.g., Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir. 2005); *In re Kingston Turf Farms, Inc.,* 176 B.R. 308 (Bankr. D.R.I. 1995).

that they lack the authority to order disgorgement.[4]

        B.        <u>Possible Code Sources of "Disgorgement Upon Insolvency" Authority</u>.

The source of a bankruptcy court's authority to order disgorgement upon insolvency is not obvious from reading the Code.[5] For the most part, courts entering such orders rely upon some combination of §§ 105(a), 330, and/or 726(b).[6]

Most "disgorgement upon insolvency" courts start their analysis with § 726(b), which provides:

> Payment on claims of a kind specified in [507(a)(1) - (10)] . . . *shall be made pro rata among claims of the kind specified in each such particular paragraph*, except that in a case that has been converted . . ., a claim allowed under section 503(b) of this title incurred under this chapter . . . has priority over a claim allowed under section 503(b) of this title incurred under any other chapter . . . .

(italics added). These courts point to the italicized language as evidence that Congress intended all estate professionals to be paid pro rata, whether or not the case started in chapter 11. In *Specker Motors,* 393 F.3d 662 (6th Cir. 2004), which involved such a situation, the court stated:

> "'[C]ourts have uniformly permitted trustees and creditors to seek the return of funds paid to professionals employed in the bankruptcy proceeding . . . . To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a 'superpriority' status that is not mandated by the Code.'"

393 F.3d at 663, quoting *Matz v. Hoseman*, 197 B.R. 635, 640-41 (N.D. Ill. 1996). *See also In re Kingston Turf Farms, Inc.*, 176 B.R. 308, 310 (Bankr. D.R.I. 1995) (in a converted case, the court held that "disgorgement is required as a matter of law, just to adhere to the mandatory payment scheme of the Code, i.e., to ensure that all creditors of the same class share pro-rata in the available

---

[4] *In re Unitcast, Inc.*, 214 B.R. 992 (Bankr S.D. Ohio 1997); *In re Hyman Freightways, Inc.,* 342 B.R. 575 (Bankr. D. Minn. 2006), aff'd, 2006 WL 3757972 (D. Minn.); *In re St. Joseph Cleaners, Inc.,* 346 B.R. 430 (Bankr W.D. Mich. 2006); *In re Headlee Management Corp.*, 519 B.R. 452 (Bankr. S.D.N.Y. 2014).
[5] 11 U.S.C. § 101 et seq.
[6] Unless otherwise noted, all statutory references are to the Code.

pool of funds.  *See* 11 U.S.C. § 726(b)"); *In re Kearing,* 170 B.R. at 7 (ordering disgorgement in a converted case and citing § 726(b) as the reason).

Courts concluding that § 726(b) requires or allows them to recapture and redistribute chapter 11 fees in converted cases then turn to §§ 330 and 331.[7]  They point out that interim fee orders are interlocutory and can be reexamined for cause, giving courts the ability to rejuggle amounts paid to achieve a pro rata distribution.  As the *Kearing* court said:

> Recognizing the interlocutory nature of orders granting interim compensation, many courts have provided that interim payments made pursuant to such orders may be subject to disgorgement in the event of an administrative insolvency.  *See, e.g., In re Gherman,* 114 B.R. 305, 307 (Bankr. S.D. Fla. 1990); *In re Wabash Valley Power Ass'n, Inc.,* 69 B.R. 471, 475 (Bankr. S.D. Ind. 1987); *In re C & J Oil Co. Inc.,* 81 B.R. 398, 403 (Bankr. W.D. Va. 1987).

170 B.R. at 7.  *See also In re Wabash Valley Power Ass'n, Inc.,* 69 B.R. 471, 475 (Bankr. S.D. Ind. 1987) (interim awards are refundable to the estate if it subsequently become necessary to pro rate administrative expenses); *In re C&J Oil Co. Inc.,* 81 B.R. 398, 403 (Bankr. W.D. Va. 1987) (same); *In re American Intern. Airways, Inc.,* 47 B.R. 716, 722 (Bankr. E.D. Pa. 1985) (same).  At least one court ordering disgorgement upon insolvency came to the same conclusion about final fee orders.  *See In re Augie/Restivo Baking Co.,* 64 B.R. 236, 238 (Bankr. E.D.N.Y. 1986) (as long as a proceeding remains pending, any compensation paid to a professional is "interim").[8]

Finally, since neither § 726(b) nor § 330 contains a disgorgement remedy, many courts invoke § 105(a)[9] for such authority.  *See, e.g., In re Kearing*, 170 B.R. at 7 (§ 726(b) does not

---

[7] Section 330 gives the Court authority to review and award compensation to professionals. Section 331 allows the Court to award interim compensation to professionals, subject to a final review under § 330.

[8] Other cases have held that final fee awards cannot be modified without complying with Federal Rule of Civil Procedure 60(b).  *See In re Rockaway Bedding,* 454 B.R. at 597; *St. Joseph Cleaners*, 346 B.R. at 440.

[9] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

specifically authorize recapture of interim fees, but such authority can be found in § 105); *In re Kids Creek Partners, LP,* 219 B.R. 1020, 1022 (Bankr. N.D. Ill. 1998) (Code does not have a specific disgorgement provision, so courts have found the power within § 105); *In re Metropolitan Elec. Supply Corp.*, 185 B.R. 505 (Bankr. E.D. Va. 1995) (while § 726(b) does not specifically permit the Court to require disgorgement, the authority for that action is found in § 105).

        C.        <u>A Critique of the "Disgorgement Upon Insolvency" Cases</u>.

A number of cases -- in the Court's opinion the better reasoned ones -- have reviewed the Code and the above case law and concluded that the Code does not give bankruptcy courts authority to order disgorgement upon insolvency. As summarized below, there are five main reasons why the "disgorgement upon insolvency" analysis does not work.

        1.        <u>Section 726(b) Does not Contain a Disgorgement Remedy</u>. First, based on its plain language, § 726 does not contain a disgorgement remedy. *In re Unitcast, Inc.* was one of the first cases to discuss the issue:

> § 726 is intended to prescribe how the assets on hand at the end of the case are to be divided among the remaining creditors. While this Court does not believe that the language of § 726 is conclusive of the matter, it does show that it was clearly not mandated in the writing of § 726 that a professional's fees, or anyone else's, would be disgorged for a pro rata distribution.

214 B.R. 992, 1001-1002 (Bankr. S.D. Ohio 1997). Chief Judge Cecilia Morris came to the same conclusion in *In re Headlee Management*:

> Section 726(b) is silent as to any remedies. Rather, it only provides that payments shall be made pro rata amongst claims of the type specified in § 507. While *Specker Motor* and other cases find that the word "shall" means that disgorgement of professional fees is mandatory to comply with § 726(b), this Court is not convinced that § 726(b) necessitates this result. Rather, § 726(b) can be read to mean that any payment by the trustee must be paid in the order given by § 726(b). Nothing in § 726(b) dictates the source of payments. *See St. Joseph Cleaners,* 346 B.R. at 444.

-6-

519 B.R. 452, 458 (Bankr. S.D.N.Y. 2014). *See also In re Home Loan Serv. Corp.*, 533 B.R. 302 (Bankr. N.D. Cal. 2015) (following *Headlee*); *In re Hyman Freightways, Inc.,* 342 B.R. 575, 578 (Bankr. D. Minn. 2006), aff'd, 2006 WL 3757972 (D. Minn.) (§ 726(b) does not provide a mechanism to order disgorgement upon insolvency); *In re St. Joseph Cleaners,* 346 B.R. at 439 (§ 726 is silent on any disgorgement remedy); *In re Next Generation Media, Inc.*, 524 B.R. 824, 829-30 (Bankr. D. Minn. 2015) (§ 726 deals solely with distributing estate property and does not give the trustee authority to collect property); *In re Premier Healthcare Serv.,* 2015 WL 1221975, at *5 (Bankr. D. Minn.) (§ 726(b) does not expressly or implicitly provide for either the turnover or disgorgement of professional compensation when a case becomes administratively insolvent).

The Court notes that § 726(b) does not apply in chapter 11 cases. *See* § 103(b). To allow "disgorgement upon insolvency," courts must apply § 726(b) *ex post facto* to payments they authorized during the chapter 11. Section 348 (Effect of Conversion) does not require that. Further, many things happen during a chapter 11 case that cannot be "undone" after conversion to chapter 7, including the authorized payment of other administrative expense claims. It therefore is more natural to read § 726(b) as simply governing trustee distributions in the converted chapter 7 cases.

        2.    <u>Sections 329, 330, and 331 Address a Professional's Entitlement to Compensation, Not Whether Distributions Must be Pro Rata</u>. Similarly, nothing in §§ 329, 330, or 331 gives courts the authority to order disgorgement solely because of insolvency. Awarding "interim" compensation under § 331 allows the court "to judge the propriety of the fees under § 330 with facts that may come to light after the payments are rendered." *In re Unitcast,* 214 B.R. at 1002. The provisions allowing interim compensation were not added to the Code "so that the

-7-
Case 15-11247-t7    Doc 460    Filed 09/15/16    Entered 09/15/16 09:18:41 Page 7 of 16

professional will insure the administrative solvency of the case." *Id.*[10]

As the court in *Hyman Freightways* explained, insolvency is also not among the enumerated reasons that a court can order disgorgement under §§ 329 and 330:

> The trustee points to 11 U.S.C. §§ 329 and 330 in support of his motion, but neither of those sections supports what the trustee wants to do and, in fact, they are counterindicative. Both of those sections create explicit statutory grounds for the court to order professional fees to be returned. . . . . The trustee has neither alleged nor hinted that the professionals' compensation exceeded their reasonable value, much less proven it. . . . No one has claimed that the professionals were paid more than the reasonable value of their total services. Thus, to the extent that the trustee purports to rely on the statute, he is trying to create something from nothing.

342 B.R. at 579-80.[11]

Congress provided for limited disgorgement authority in § 329(b) and in § 330(a)(5); in both instances the fees paid must exceed the amount approved by the Court.[12] The inclusion of disgorgement remedies in these sections strongly implies that Congress considered the circumstances under which disgorgement would be appropriate and intentionally omitted the "disgorgement upon insolvency" option. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts*, Canon 10, p. 107 (2014) (the expression of one thing implies the exclusion of others).

Judge Hughes' argument regarding the 1994 addition of § 330(a)(5) accentuates this point:

> The courts' latitude under Section 105(a) prior to 1994 has been circumscribed by Congress' enactment of Section 330(a)(5). What had been a question for debate has now been answered by Congress' declaration that disgorgement of attorneys fees previously awarded may be required only in the context of adjusting the final

---

[10] While interim fee awards are interlocutory, *see, e.g., In re Callister*, 673 F.2d 305 (10th Cir. 1982), that only means that the Court has the ability to modify the orders without complying with Rule 60(b). The interlocutory nature of interim fee awards has no bearing on whether courts can or should order disgorgement upon insolvency.

[11] In this case, the allowed professional fees substantially exceed the interim compensation paid, so neither § 329 nor § 330 can be a basis for ordering disgorgement.

[12] Section 329(b) authorizes disgorgement if a pre-petition fee exceeds the value of serves rendered. Section 330(a)(5), which was added as part of the Bankruptcy Reform Act of 1994, authorizes disgorgement if the interim compensation paid exceeds the final fee award.

-8-
Case 15-11247-t7    Doc 460    Filed 09/15/16    Entered 09/15/16 09:18:41 Page 8 of 16

> fee award under Section 330. Congress could have added a similar disgorgement remedy to Section 726(b) at the same time it codified disgorgement for purposes of Section 330. It did not.

*St. Joseph Cleaners,* 346 B.R. at 439. Thus, the view that bankruptcy courts have unfettered authority to order disgorgement upon insolvency was substantially weakened by Congress' inclusion of very limited disgorgement provisions in the 1994 amendments. *See also Headlee Management*, 519 B.R. at 459 (disgorgement orders limited by § 330(a)(5); court should not alter the balance struck by Congress); and *Premier Healthcare Services,* 2015 WL 1221975, at \*6 (§ 330(a)(5) does not provide for disgorgement upon insolvency).

3. <u>Ordering Disgorgement Upon Insolvency is Contrary to § 549(a)(2)</u>. Section 549(a)(2) allows chapter 7 trustees to avoid *unauthorized* post-petition transfers. Courts uniformly acknowledge that post-petition "ordinary course" payments cannot be recovered by trustees under § 549(a)(2), because the payments were authorized. *See, e.g., In re Lochmiller Indus.,* 178 B.R. 241, 249 (Bankr. S.D. Cal. 1995*)* ("all of the cases which have addressed the issue have uniformly held that funds paid to administrative claimants in the ordinary course of a Chapter 11 case may not be recaptured"); *In re Maxwell*, 62 B.R. 533, 534 (Bankr. N.D. Ind. 1986) (ordinary course payments cannot be avoided; the alternative would make it impossible to do business with a chapter 11 debtor); *In re Livore*, 473 B.R. 864, 868 (Bankr. D.N.J. 2012) (the Code does not authorize chapter 7 trustees to recover post-petition payments made in the ordinary course of business).

Interim professional fee payments are authorized by the Court. Unless disallowed under § 330, there is no principled reason to treat them differently than post-petition ordinary course payments. *See St. Joseph Cleaners*, 346 B.R at 435-36 (§ 726(b) does not grant authority to "reel back" interim professional fees, which are protected by § 549(a)(2); any recapture must be

-9-
Case 15-11247-t7    Doc 460    Filed 09/15/16    Entered 09/15/16 09:18:41 Page 9 of 16

pursuant to § 330(a)(5)); *Headlee Management,* 519 B.R. at 459-60 (§ 549(a)(2) prohibits recovery of ordinary course payments to professionals regardless of § 726(b)); *In re Premier Healthcare Services,* 2015 WL 1221975, at *6 (court declines to use § 726(b) to order disgorgement, in light of § 549(a)(2)).

    4. <u>Ordering Disgorgement Upon Insolvency Unfairly Targets Professionals</u>. Making chapter 11 professionals the guarantors of administrative solvency is unfair:

> [C]onsider a trade debt in a Chapter 11 case that has been paid 100% when the case becomes administratively insolvent. No one would argue that this creditor should be forced to repay the sums paid to it, even though other creditors entitled to administrative expense status may have been paid nothing. No such redistribution was contemplated by Congress. Disgorgement and redistribution is a judicial concept that has to do only with professional's fees, and it is really punishment of the professionals for allowing the case to continue too long and presumably causing the assets to be drained. Thus, this disgorgement upon insolvency doctrine is really intended to operate either as a sanction, or as a way to equitably subordinate the professionals' claims to other less culpable creditors.

*In re Unitcast,* 214 B.R. at 1001. *See also Hyman Freightways,* 342 B.R. at 581 (refusing to rely solely on equitable principles due to the "unfairness visited on the targeted professionals"); *In re Anolik*, 207 B.R. 34, 38-39 (Bankr. D. Mass. 1997) (court was "somewhat troubled" by a double standard treating professionals differently than other administrative creditors); *St Joseph Cleaners,* 346 B.R. at 444 ("it is reasonable to ask why chapter 11 professionals should be singled out in pursuit of an unachievable goal based on a remedy which is not found in the … Code").

    5. <u>Section 105(a) Should Not Be Used to Create a Disgorgement Remedy Congress Did Not Intend</u>. Because neither § 330 nor § 726(b) contains a disgorgement upon insolvency remedy, only § 105(a) remains as a potential source of authority to order disgorgement upon insolvency. At one time § 105(a) was viewed as a broad license to do equity. That is no longer true. In 2014 the Supreme Court clarified that the section cannot be used to create a remedy otherwise absent from the Code:

-10-

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere. *See Morton v. Mancari,* 417 U.S. 535, 550–551, 94 S. Ct. 2474, 41 L.Ed.2d 290 (1974); *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 206–208, 52 S. Ct. 322, 76 L. Ed. 704 (1932).

*Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014). *See also In re Scrivner*, 535 F.3d 1258, 1265 (10th Cir. 2008) (Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity") (internal quotations omitted).

The Code is not silent with respect to clawbacks; it "has a comprehensive system for the recovery of assets by the trustee." *Headlee Management*, 519 B.R. at 459. Creating a disgorgement remedy using § 105(a) would run afoul of the existing recovery scheme:

> "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.... The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs." *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 97, 101 S. Ct. 1571, 67 L. Ed. 2d 750 (1981).

*Headlee Management*, 519 B.R. at 459. In *St. Joseph Cleaners*, Judge Hughes made a similarly persuasive point by discussing all of the applicable Code sections:

> In short, the Bankruptcy Code itself provides a comprehensive scheme for the distribution of estate property during the administration of a bankruptcy case. Section 363(b) permits the payment of non-professional administrative claims and Sections 330 and 331 permit the payment of professional administrative claims. Moreover, there is no recovery of any distribution once payment is authorized and made. 11 U.S.C. § 549. The only exception is that an interim distribution made under Section 331 on account of professional fees may be recovered under Section 330(a)(5) if the calculation of the Section 330 final award so requires.

346 B.R. at 439.

-11-
Case 15-11247-t7    Doc 460    Filed 09/15/16    Entered 09/15/16 09:18:41 Page 11 of 16

Like Judge Hughes, this Court is "troubled" by the thought of using § 105(a) to correct a perceived omission by Congress, *id.* at 434,[13] and will not rely on that section to order disgorgement upon insolvency. *See also Unitcast*, 214 B.R. at 1001 ("When Congress wrote the Bankruptcy Code it understood that some administrative expense creditors would be paid more than others during the course of a bankruptcy case"); *Hyman Freightways*, 342 B.R. at 579 ("§ 549 shows that Congress knew how to explicitly provide for trustees to recover postpetition transfers"); *Home Loan Serv. Corp.*, 533 B.R. at 305 ("section 105 should not be employed to create rights that appropriately would be found (if at all) in other specific sections of the Code"). *See generally* Scalia & Garner, *Reading Law*, Canon 8. p. 93 (Nothing is to be added to what the text states or reasonably implies).

The Court has reviewed the case law and the relevant sections of the Code, and concludes that Congress did not intend to give bankruptcy courts authority to order disgorgement upon insolvency. Using §§ 105, 329-331, and/or 729 to create such a remedy would be an improper encroachment on legislative power and a misreading of the Code.

E. <u>Other Problems with Disgorgement in This Case</u>.

Apart from the lack of statutory authority to order professionals to disgorge upon insolvency, there are other problems with Goodman's request.

    1. <u>Need to Liquidate the Chapter 7 Estate</u>. The chapter 7 estate has not yet been liquidated. The theory for ordering disgorgement upon insolvency is that similarly situated chapter 11 professionals would not receive the same percentage payment, contrary to the "pro rata

---

[13] "Their apparent rationale is that Section 726(b) so clearly mandates a pro rata distribution among creditors that Congress' failure to include a remedy to complement that mandate can be explained only as oversight on its part. Consequently, these courts conclude that it is appropriate for them to exercise their Section 105(a) authority to correct this obvious error. I am always troubled when such reasoning is applied. . . . [F]or the most part, the Bankruptcy Code is well drafted. Consequently, judicial intervention should be the exception, not the rule."

distribution" directive of § 726(b). The amount each claimant might receive, however, cannot be known until the estate has been fully liquidated and administered. *See, e.g., In re Dick Cepek, Inc.,* 339 B.R. 730, 737 (9th Cir. BAP 2006) (before a court applies § 726(b), property of the debtor must be administered and reduced to cash).

        2.      <u>Retainers</u>. Pre-petition retainers are not subject to disgorgement. *See, e.g., In re Dick Cepek*, 339 B.R. at 737-38 (citing cases and holding that professionals with valid security retainers are protected from disgorgement); *In re Cryptek, Inc.*, 2010 WL 5330507, at *4 (Bankr. E.D. Va.) (courts are "in nearly unanimous agreement that prepetition security retainers are not subject to disgorgement simply to achieve equal distribution among similar creditors under section 726(b)"). LRRC and Tal Young both had pre-petition retainers, which would prevent Goodman from reaching those funds.

        3.      <u>Failure to Bill the Estate Separately</u>. Goodman did not bill each of the four Debtors separately, so it would be difficult to determine the amount of her claim in this case. In the three cases that were closed rather than converted, it would not be possible to rejuggle the amounts paid and received under any Code sections if the Court were inclined to do so.

        4.      <u>Final Orders</u>. The orders approving the professionals' fee applications in this case (including Goodman's) are all final orders. *See In re Union Home and Industrial, Inc.,* 376 B.R. 298 (10th Cir. BAP 2007) (orders fixing a final fee award in a given case are final and would be subject to immediate review);[14] *In re Rockaway Bedding, Inc.*, 454 B.R. 592, 597 (Bankr. D.N.J. 2011) (final fee orders are not subject to disgorgement under § 330(a)(5)). Even if the Court were willing to consider ordering disgorgement of fees paid under interim fee orders, the final nature of the fee orders entered in this case precludes such a possibility.

---

[14] *Cf. In re Callister,* 673 F.2d at 306 (§ 331 interim fee orders are interlocutory).

5. <u>Standing</u>. Most disgorgement motions are filed by chapter 7 trustees. *See, e.g., In re Kearing*, 170 B.R. at 2; *In re Kingston Turf Farms,* 176 B.R. at 309; *In re Lochmiller,* 178 B.R. at 243. There is little or no case law holding that underpaid professionals have standing to seek disgorgement orders.

F. <u>Safeguards in the Code</u>.

The Court is sympathetic to Goodman's plight. Administrative insolvency is a serious hardship on any creditor, professional or otherwise. Goodman provided valuable professional services to this estate and did not get paid for them.

Although it offers little comfort here, there are Code provisions that provide some protection to chapter 11 professionals and other administrative expense claimants. First, as shown above, § 330(a)(5) allows for disgorgement in limited circumstances.[15] Second, chapter 11 professionals can seek conversion, dismissal, or the appointment of a trustee if the debtor in possession does not pay them. *See* §§ 1104(a) and 1112(b)(4). Third, unpaid professionals can ask for a status conference on short notice. *See* § 105(d). Fourth, a professional can ask that orders allowing interim payment of professional fees be modified or suspended if the debtor in possession is favoring some professionals over others. *See* 3 Collier on Bankruptcy, ¶ 331.04[1] (15th ed. 1996) (courts can revoke the privilege of receiving interim compensation). The Court likely would be receptive to these requests where the chapter 11 case is sliding towards administrative insolvency.

---

[15] In a failed chapter 11 case, courts may take into account the results obtained when ruling on the reasonableness of fees. *See, e.g., Headlee Management*, 519 B.R. at 461 (administrative insolvency can be relevant to whether a professional's fee are reasonable); *In re Home Loan Service Corp.*, 533 B.R. at 308 (if debtor's counsel continued to expend a lot of time and effort on reorganization-related tasks after he knew the case was heading toward chapter 7, the court could reduce the fee award).

-14-

III.  CONCLUSION

Nothing in the Code gives the Court authority to order chapter 11 professionals to disgorge upon insolvency. Rather, a review of the relevant Code sections shows that Congress deliberately omitted such a remedy, while the Supreme Court's ruling in *Law v. Seigel* prevents the Court from just doing equity. The motion for equitable apportionment therefore must be denied. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: September 15, 2016

Copies to:

Susan Goodman
259 N. Meyer Ave.
Tucson, AZ 85701

Candice Owens
1801 Rio Grande Boulevard NW, #B
Albuquerque, NM 87104

Kent Turley
722 East Osborn Road, #100
Phoenix, AZ 85014

Scott K. Brown
201 E. Washington Street, Suite 1200
Phoenix, AZ 85004

United States Trustee
P.O. Box 608
Albuquerque, NM 87103

Tal Young
20 First Plaza NW, #500
Albuquerque, NM 87102

Paul M. Fish
P.O. Box 2168
Albuquerque, NM 87103

James C. Jacobsen
111 Lomas NW Ste. 300
Albuquerque, NM 87102-2368